Fair Credit Reporting Act requires mortgage lenders to provide disclosures to consumers when lenders use their credit scores. We agree that this appeal raises just a single question, and that is, could a rational jury conclude that Quicken Loans used Ms. Kingery's score? And despite some quibbling at the margins, I think we generally agree on what the word used means. On the one hand, we concede that it doesn't simply mean obtain. On the other hand, Quicken disclaims the interpretation it pressed below, which is that used means based upon, to make a decision based upon the score. Instead, I think we generally agree, as the Supreme Court has taught us in other statutes involving the word used, that it means to employ something for some purpose, to implement it, to convert it to one's use or service. And so this appeal requires this court to apply that definition, and to decide whether a rational jury could conclude, based on this record, that Quicken used Ms. Kingery's score. And in doing so, the court has to consider all of the evidence in the record, and must draw all inferences in favor of Ms. Kingery, and may not weigh the evidence or make credibility determinations. This most straightforward path to reversal here, I think, is to focus this court on the Fresh Start issue. Fresh Start is a program that Quicken has, and that it had in 2010, the time, the relevant time here, that is designed, is specifically designed to help consumers improve their credit scores. And I'd like to focus the court on Joint Appendix 269. That's Quicken's internal training guide for bankers. And what that document says, Appendix, Joint Appendix 269, at the top of the page, it tells you what the program is. It says, our Fresh Start credit repair program was specifically designed to help our clients improve their credit scores in order to qualify for a mortgage, or to qualify for premium or preferred pricing. I'm not exactly sure about the timeline, so help me out. Was the application denied prior to the referral to Fresh Start or after? It was denied after, but it was roughly contemporaneous, Your Honor. But I think what you're getting at, if I may, is the in connection with language, right, in the statute. The statute says that the statute applies in connection with an application initiated or sought. And I think that's key. The Federal Trade Commission has provided some guidance on what that language means. We cite it in the blue brief, page 28, note 4. What the Federal Trade Commission has said is a disclosure is required even if the consultation with a banker does not include an informal or formal application. Simply consulting with a banker about a potential application is sufficient. Here, the Fresh Start program is designed to put you back into the process, right? What it says is you don't qualify. Your credit score falls below a certain threshold. But if you look at that exhibit that I just read you, it's designed to help you improve your credit score in order to qualify for a mortgage. Could you help me, though, in response to Judge Floyd's question and in terms of sequence? Yeah. It was my understanding, and if I'm off in terms of the sequence, that your loan application had been denied before there was a reference to Fresh Start. Is that not correct? Well, it's not correct because Ms. Kinkery didn't actually make a loan application. She made an inquiry. And I'm sorry, loan inquiry. You're right. I used the term, the incorrect term. But in terms of sequence. Yes. The loan inquiry preceded the reference to Fresh Start, which makes sense. That's true. And, in fact, the loan inquiry had been denied. Is that not correct? No, that's correct. But Ms. Kinkery was then put back into the process when she was pitched on Fresh Start and paid for the program and agreed to fork over a few hundred dollars for this program that, by Quicken's own concession, is designed to qualify people to put them back into the process. And so if you look at the Federal Trade Commission guidance, that falls squarely within this language of in connection with an application that's either initiated or sought. By paying that money to be in that program, a consumer is saying, I want to pay for your service to improve my score to potentially qualify for a mortgage. And the record doesn't even contain any competing inference on this. Again, at Joint Appendix 269, Quicken explains to its bankers that qualifying for this program is all about the credit score. Target clients have a credit score under the conventional 620. And so that's just uncontested, that the way you get into this program is by Quicken examining your credit score and falling beneath a threshold. And there's not even an argument on the other side that anything different happened here. But as I understand the ambiguity, and again, please correct me if I'm wrong, the loan application, the loan inquiry, it would be in connection with a subsequent loan inquiry. And that's what I'm, there's some ambiguity, or I'm unclear on how, whether it was a given that the process would begin again, might begin anew. Well, the language of the statute is in connection with an application initiated or sought. Now, Ms. Kingree never made an application, right? So the inquiry was in connection with an application that would be sought if she were held to qualify to make an application. And so if you're looking at the period before the inquiry is denied, or if you're looking at the period when she's in Fresh Start, those are both situated identically to the prospective future application. And they both, under the Federal Trade Commission's guidance, fall within this language of application initiated or sought. And I should also mention, Quicken hasn't pressed this argument here. So as the case comes to this court, there's no claim on the part of the Quicken in their briefs that that aspect of the statute isn't satisfied. Well, it may have been because they weren't clear that you were pressing it, because it is not entirely clear. What is not entirely clear? I mean, it is clear that we're pressing, we've pressed all of these various aspects of the process, including Fresh Start. And we did so in our opening brief, and Quicken hasn't come back and made that argument. And I think they are right not to make the argument, because the language of the statute is pretty darn expansive in connection with an application initiated or sought, and because the Federal Trade Commission has interpreted it in that way. And so then you have the question of use, which is, I think, really what the parties agree this case is about. Was there use here? And the reason I say that Fresh Start is the most obvious path to reversal is because this is a situation in which not only could a rational jury make the inference that Quicken used Ms. Kingery's score, but, in fact, there isn't really a competing inference that's been put forward by Quicken. And there isn't, as far as I can tell, a competing inference that's available in the record. And so this is why we suggest in our reply brief this may even be the rare situation in which the appellate court could direct summary judgment in the plaintiff's favor, as has happened in at least one Fair Credit Reporting Act case that we've cited. But, of course, you don't have to go that far. You can simply conclude that there's a genuine issue of material fact and remand for the district court to weigh the evidence. Did the district court address this issue? The district court's opinion does not discuss this issue, unfortunately. It discusses the issue of use. It concludes that the credit score was not used, but it doesn't provide any analysis of this issue. The issue, however, was raised in our summary judgment opposition. At page 6, we said that Quicken used Ms. Kingery's credit score to attempt to correct it. I thought it was referenced only in the disputed facts section. Is that not correct? Well, the way this brief worked is that- Is that correct? It's correct, Your Honor, except that it was incorporated by reference into the argument section. So, in other words, none of the specific uses are discussed seriatim in the argument section of that brief. The argument section of the brief deals with this statutory interpretation question of what use means. The specific uses are delineated in the disputed facts section and then incorporated by reference. So, if you were to say, as Quicken, I think, tries to suggest, that we didn't preserve the issue we're putting in the argument section, then you'd have to conclude we preserved nothing. I mean, that's just not how waiver works. Well, let me ask in terms of was she put into the Fresh Start program or recommended for that because of her credit score or because of the foreclosure, which is the reason they turned her down in the first place? Well, there's no-Quicken hasn't even argued that, and there's nothing I can see in the evidence that would suggest that because the program is designed to improve credit scores and- I think it would be very helpful for me if you would just answer the question. I am trying to answer the question. There's no evidence that she was put into the Fresh Start program because of the foreclosure. But the criteria was not disclosed to your client until 2012, long after it was marketed to her. Oh, you're referring to the training guide. That training guide is dated 2012. That's the guide, the version of the guide that Quicken has produced. But they haven't suggested that the rules for this program were any different in 2010. And in 2010, this is at Joint Appendix 104, there's a letter to Ms. Kingrey in May 2010 that describes the program similarly as a program designed to improve credit scores. There's also an interrogatory response at Joint Appendix 654 in which they admit putting her into this program and that it's a credit repair program designed to improve credit scores. So throughout the record, it's described consistently. There's never any suggestion in the record that a foreclosure or, frankly, anything other than a credit score puts you into a program designed to improve your credit score. If there are no questions, I'll reserve the remainder of my time. Wait a minute. I want to ask you a question. You're focusing on the Fresh Start Credit Repair Program. Yes. But that is not an application for a closed-end loan or for a mortgage loan. So how could that have been used with respect to her mortgage inquiry or credit inquiry, whatever you want to call it? It's a program, Your Honor, that is specifically designed to repair people's credit to qualify for the mortgage process. And it says that at Joint Appendix 269, this is, quote, in order to qualify for a mortgage or to qualify for premium or preferred pricing. That's the only point of the program is to qualify people for a mortgage and then presumably to submit an application. And so there's not even a suggestion on the other side that there's any purpose, other purpose, to this program. Well, how was her credit score used with respect to the Fresh Start Credit Repair? It's used to determine eligibility for the program. There's a cutoff of eligibility for that program. Exactly. The only patients sell this program to people who have credit scores below 620. Did your client agree to enroll in that program? She did. She paid the money. She did. And so the point is that they used her score. They used her score throughout the process, right? They used their score from – Well, yeah. I want you to tell me how they used it, how they used her credit score. They used her score simply by looking at the score, comparing it with the cutoff, determining that it fell below that cutoff, and then pitching her for the program. That is unquestionably use. In fact, that is use even under the strictest definition of use, which is to base a decision on. If you take the Supreme Court's definition of use, that goes much further than that. And Quicken doesn't deny that if they did that, that's use. They simply contest that the evidence says what we say it says. And so if there are no further questions, I'll sit down. Thank you. Judge Duncan-Dee. I just wanted to make sure that Judge Hamilton had his questions answered. No, nothing further. Thank you. Thank you. May it please the Court, my name is John Lynch from Quicken Loans. I wanted to pick up on the point opposing counsel just raised on Fresh Start. The only record of Fresh Start in the appendix is on page 269, which is the training material, and in the call log where the Ms. Wilkes or Kangary was referred to Fresh Start. There is absolutely no evidence of why she was transferred to Fresh Start or any eligibility criteria. Judge Floyd, you asked opposing counsel that exact question, and he said there was no evidence. And then when he was questioned by Judge Hamilton, he says there was evidence, and it was only referred to Fresh Start because of a credit score. That is not true. There is no evidence in the record that this account was transferred to Fresh Start based on credit score. I think he said there was no dispute in response to Judge Floyd's question. It wasn't clear to me what his response was, but I think he was saying that there's no dispute, although it wasn't responsive. Our position, Judge Duncan, is there is no evidence in the record about why the account was referred to Fresh Start. Judge Floyd mentioned the possibility of foreclosure because that was the reason the inquiry was denied in the phone call of May 3rd. The transgression in the timeline here is May 3rd there was a phone call. Credit scores and the credit report were obtained. Immediately denied due to a foreclosure. May 7th, the account was referred to Fresh Start. No reason why it was referred to Fresh Start. There's no evidence about whether that was what's called a warm referral or an automated referral. If we look to the only piece of paper about Fresh Start, which is on 269, it talks about how do you refer clients to Fresh Start. That's a credit repair program. If you look under that section on 269, it does not talk about eligibility or referring clients due to a credit score. It does say the target clients are people that have a credit score below 620, but it does not say that the eligibility is based on the credit score. There's no evidence in the record on that. It's certainly logical that she was referred to a credit repair program to try to get the foreclosure off of her credit report because that was the reason for the denial, and that was the reason that was in the record. Another point that I hope was clear from the briefing and her testimony, is she knew about the foreclosure. She was planning a case against GMAC, which she subsequently filed. She knew her credit wasn't good. She called Quicken Loans and made the inquiries from these companies, knowing she would get denied because of that foreclosure, and that case was filed subsequently. There's no evidence of actual use by this credit repair program. It says target clients have a 620. It doesn't say that they're only referred to Fresh Start based on any type of credit score being below, and there's no evidence in the record at all. Since use is not really or clearly defined in the statute, do you concede that the district judge properly defined the term use? I do, Judge, and I think there was no, I mean, as I think the court could tell, there was not a lot of law on this point. It was just a statutory interpretation. There was the Bailey case saying mere possession is not enough, and obtaining the score is not enough. You have to take the score and use it to achieve some purpose or objective, and I think that's what the court ruled, Judge Goodwin ruled, and that was something that we agree with. And I think one point that wasn't really emphasized, even though we put it in the brief, as far as when this credit score disclosure notice is required to be sent, is if you look at 1681 GG and it's 1E4 in the statute, it talks about that this notice only has to be sent one time per transaction, and we believe that means you only have to, it doesn't matter how many times you pull the credit report and you obtain the credit score, that's not the test. The test is when the credit score is used in a transaction, and it only has to be sent once, regardless of how many times you actually pull and obtain different credit scores. And we did raise that issue with Judge Goodwin. We raised it in the briefs, and we believe it was instructive. What we also believe is instructive is the form notice in the statute that talks about use. It's when you use a credit score to make a decision on whether the home loan will be approved or not approved and in setting the interest rate. Opposing counsel talked today about that everyone's in agreement on the definition of use. The entire time in the lower court, they were arguing that this statute was triggered based on obtain, and possession. That's what Judge Goodwin ruled on, and now realizing that's not a good argument, they have changed that argument pronouncedly in the appellate briefing. Also, I don't know if it was Judge Floyd or Judge Duncan talking about fresh start. That wasn't in the opinion by Judge Goodwin because it was not addressed in the argument at all in the summary judgment briefing. It was raised in opposition to a disputed fact on summary judgment, but that is it. And that issue we believe under Fourth Circuit precedent has been waived. That argument was not given to Judge Goodwin, and that's something that's been delved in and manufactured on appeal. If we do not agree with you as to waiver, how would you argue we should deal with it? There's absolutely no evidence that the credit score. Here are two points, Judge. There was absolutely no evidence that fresh start used the score for eligibility when it was sent to fresh start. They took three depositions of IT people of Quicken Loans and did not get into eligibility or why this particular account was sent to fresh start. There is no evidence of actual use at all. Also, Judge Floyd, I think you mentioned the training manuals from 2012. We don't dispute that fresh start was in existence in some form in 2010, but the training manual that they rely on is 2012, and the account was referred to fresh start. But there's no evidence in the record that the score was used to get it to fresh start. There was no evidence of what the phone call or what the substance of the phone call was from the employee of fresh start. Also, Judge Hamilton made a great point. This is a credit repair system. That could be used. Maybe the target clients are 620 or below, but that doesn't mean it's the only thing for credit repair. Having a foreclosure on your credit report certainly is detrimental not only to your scores, but something that is obviously a red herring, and it was an immediate red herring to Quicken Loans and the reason it was denied. Does it make any difference that she had apparently inquiries to other lenders at the same time? Does it have anything to do with making a difference to us? There is something, Judge. If you look at the part of this statute that says you only have to send one notice per transaction, there is a section in that statute that says if other parties, you know, other lenders had sent notices, because the point was to give notice of what your credit score was. It does mention in there that wasn't part of the record in this case at all, and I hope the Court understands they're not complaining about whether we sent the notice. We did send the notice. They're not complaining about the substance of the notice. They're complaining we didn't do it fast enough, and the statute says as soon as reasonably practical. I mean, the statute isn't even clear about when. Their whole point in this case is trying to argue and seeking a national class action that had to be sent immediately within, you know, three to five days. That's all this case is about. We said the notice didn't have to be sent at all because they have none, no evidence of actual use. What they do have is it could have been used. They do have there was an ability, you know, that could have been used, but could have been used is not enough evidence to avoid summary judgment, and they have no evidence or any inference of actual use, and we believe Judge Goodwin made the right decision when he looked at this. They had ample, ample opportunity to secure evidence of actual use, and they didn't, and there's all kinds of situations. Quicken Loan sends this notice anytime there's a qualification denial or with the application, even if there was no use because you'd have to look at it individually, and to have a good compliance program, you have to send it on a, you know, set date after a decision, and they sent it in this situation even though the credit score wasn't used. There's all kinds of times when the credit report's obtained, which does have the credit score, where the credit score is not used. You could have a bankruptcy. You could have a foreclosure. You could have someone that wants to have a loan with a mobile home, and they're automatically disqualified. What happened in this situation, she was automatically disqualified in the first phone call. The notations from Quicken Loans was clear that it was due to a foreclosure. There's absolutely no evidence in this record that the credit score was actually used, and all they're doing is, in our belief, is distorting the record, trying to come up with some sort of inference of use, and every inference they had is the score could have been used, but that can't be an inference of actual use. If you have any additional questions, I certainly. We also, I would like to raise this point. We move for summary judgment after extensive discovery on a number of other points. Judge Goodwin picked use, but we don't believe there was an application here. This was just a prequalification denial. We could have obtained summary judgment on that. We also move for summary judgment on willfulness, which is required in this situation, and Judge Goodwin didn't have to rule on that, but we don't believe there's any way that Quicken Loans could be faulted for not interpreting this statute correctly. So this one point that Judge Goodwin picked to rule for us on summary judgment wasn't the only point raised on summary judgment. We believe many other points would be persuasive, and we could win on summary judgment. Am I to infer from that that you don't think it would be appropriate for us to direct judgment for the appellant? We do not, Judge. We believe there's multiple grounds to direct judgment for us. Thank you, Judge. Thank you. Thank you. Just a few quick points, and, Judge Duncan, I want to try to clear up the question you asked about. What I'm saying is not that there's specific evidence of, you know, where Quicken admits that it used the credit score to put Ms. Kingrey into Fresh Start. Rather, what I was saying is there's no competing evidence to suggest otherwise. They haven't even suggested until this oral argument a competing inference, actually. Quicken hasn't been able to bring itself to deny in its briefing, either in the district court or in this court, that it, in fact, used her score in that way. And that's because that's what the way the program is designed, is that people are put. Are we talking about Fresh Start? We're talking about Fresh Start, yes. I'm trying to respond to your concern that there's some lack of clarity about my response in the opening argument. So I want to be clear. There is no. What they're suggesting now, I think, is they did below that this was a woman who had a home in foreclosure. And I assume this is, you were saying that there's no counter inference, and that would equally be applicable in the context of Fresh Start, wouldn't it? Well, certainly they can raise the possibility that that was used, right? I'm only responding to your characterization that there's no competing inference. Well, there was no competing inference identified in the papers. The foreclosure possibility as a possibility for Fresh Start was identified for the first time here at oral argument. And let's be clear. Ms. Kingrey was not responsible for foreclosure. She was the victim of identity theft. She was a victim of a rather serious fraud that's described at Joint Appendix 118 to 119. There's a Virginia state court judgment finding that she was a victim of this fraud. She was trying during this year to clear up her credit reports, credit history. And it wasn't until the end of 2010 that she was finally able to remove that information from her score. So this isn't a situation in which the lack of notice was merely academic. It was quite important to her. You're saying lack of timely notice. The lack of timely notice, yes. And the upshot of Quicken's position, I want to respond to this point as well, Quicken maintains that it was not required to send a disclosure at all. That's on page one of their brief. So it's true that they did send some notice later, but their legal position is that they were not required to send a notice at all. And so if the court were to affirm here, you'd be setting a precedent that a lender can use the score throughout the process, even in terms of placing someone into a credit repair program and not be required to send the credit score notice. It's industry practice to send these notices. The Federal Trade Commission has recognized that the standard industry practice is to send the notice within three days of obtaining the score. And, in fact, I believe that's even what Quicken is doing now. So the question here is whether they have to send the score at all and whether a rational jury could conclude that the score was used to put someone into a program, the only purpose of which is to raise their credit score. So I think a measure of common sense is called for in evaluating that evidence. It's all laid out in our reply brief. It was all in the summary judgment record. And this is sort of a classic case of applying the summary judgment standard. Could a rational jury conclude, based on this evidence, that the credit score was used to place Ms. Kingery into a program whose only purpose was to raise credit scores? And as far as the evidence reveals, the only criteria for being placed in that program was falling below a credit score cutoff. Now, if there were some other reason that she was placed in that program, Quicken was free to articulate or explain that reason in the district court, in its appeal brief to this court. It hasn't done that. Not only has it not pointed to any evidence, they haven't even made a representation to the court that they had any other basis or any other reason for placing her in that program. What's foreclosure got to do with this case? I mean, that's a reason? They have said that foreclosure was a potential reason for denying her for the mortgage, but they have not said that foreclosure was a reason for placing her into that program. But you haven't brought forth any evidence that her credit score was. So what would they be responding to? Every indication in the record is that the only way that people were placed into this program was- Every indication being the face of the training guide from a different time period? The face of the training guide is one place. There's also the letter that was sent to her in May 2010. There's her interrogatory response. So Quicken hasn't denied that the only criteria for placing someone in that program is falling below the credit score. And if summary judgment is reversed, and I understand, Judge Duncan, you have some resistance to this, but we would be free to develop the evidence and see whether Quicken can even articulate some other basis. If there had been some other basis, it would have been easy enough for them to articulate it. I think their silence on this score speaks volumes. Common sense suggests that this is a program that has no purpose other than to repair credit scores when the credit score is low. Thank you. Thank you very much. We will ask the clerk to adjourn court for the day and come down and greet counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Allyson K. Duncan, Henry F. Floyd, Clyde H. Hamilton